131 Nev., Advance Opinion 79
IN THE SUPREME COURT OF THE STATE OF NEVADA

WATSON ROUNDS, P.C.,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ELIZABETH GOFF GONZALEZ,
DISTRICT JUDGE,
Respondents,
  and
HIMELFARB & ASSOCIATES, LLC, A
NEVADA LIMITED LIABILITY
COMPANY; AND BRUCE HIMELFARB,
AN INDIVIDUAL,
Real Parties in Interest.

No. 65632

FILED

SEP 24 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order awarding attorney fees jointly and severally, as a sanction, against petitioner law firm.

*Petition granted.*

Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno,
for Petitioner.

Kolesar & Leatham, Chtd., and Matthew T. Dushoff and Daniel S. Cereghino, Las Vegas,
for Real Parties in Interest.

2/8/16: Corrected per letter to publishers. CT
9/24/15: Corrected per order filed 9/24/15. CT

15-28893

BEFORE THE COURT EN BANC.

## OPINION

By the Court, PARRAGUIRRE, J.:

NRS 7.085 allows a district court to make an attorney personally liable for the attorney fees and costs an opponent incurs when the attorney "[f]ile[s], maintain[s] or defend[s] a civil action . . . [that] is not well-grounded in fact or is not warranted by existing law or by [a good-faith] argument for changing the existing law." Here we are asked to determine whether (1) Nevada Rule of Civil Procedure (NRCP) 11 supersedes NRS 7.085, and (2) the district court abused its discretion in sanctioning the law firm under NRS 7.085. We conclude NRCP 11 does not supersede NRS 7.085 because each represents a distinct, independent mechanism for sanctioning attorney misconduct. However, we also conclude the district court abused its discretion in sanctioning the petitioner under NRS 7.085 without making adequate findings. Accordingly, we grant petitioner's request for a writ of mandamus and direct the district court to vacate the portion of its order making petitioner liable for attorney fees and costs.

## FACTS

FortuNet, Inc., is a gaming company that leases bingo equipment to casinos. In 2011, FortuNet filed the initial version of its complaint in an action against former FortuNet employees and an entity they created; the claims centered on allegations that the employees breached various duties to FortuNet and improperly used FortuNet's intellectual property. FortuNet later retained petitioner Watson Rounds, P.C. (Watson) as its new counsel, and Watson prepared a second amended

complaint adding real parties in interest Bruce Himelfarb[1] and Himelfarb & Associates, LLC (collectively Himelfarb) as defendants. All claims against Himelfarb derived from an alleged kickback scheme and the alleged theft of FortuNet's intellectual property.

Each of FortuNet's claims against Himelfarb survived summary judgment. The parties proceeded to trial, but before the jury entered a verdict, the district court dismissed several of FortuNet's claims against Himelfarb for lack of evidence under NRCP 50(a). FortuNet also voluntarily dismissed several other claims against Himelfarb. The remaining claims against Himelfarb made it to the jury, which had the option of finding that Himelfarb was involved in the kickback scheme, the theft of FortuNet's intellectual property, both, or neither. The jury rejected FortuNet's claims against Himelfarb, found for Himelfarb on its counterclaims, and specifically asked the district court if it could include Himelfarb's attorney fees when calculating the damages Himelfarb suffered from FortuNet's breach of the implied covenant of good faith and fair dealing. The district court instructed the jury that it could not add attorney fees because such fees, if any, would be assessed posttrial.

The district court eventually determined that FortuNet would be liable for Himelfarb's attorney fees and costs in the amount of $551,216.83. Additionally, the district court determined Watson was jointly and severally liable with FortuNet for those fees and costs pursuant to NRS 7.085. The district court explained that Watson's liability was proper because, "despite not being well-grounded in fact and

---

[1]Bruce Himelfarb is the president of Himelfarb & Associates, LLC.

not warranted by existing law or a good faith argument for a change in existing law, [Watson] filed and maintained FortuNet's claims against [Himelfarb] and defended FortuNet against [Himelfarb's] counterclaims as contemplated by NRS 7.085."

The district court sanctioned Watson under NRS 7.085 based on (1) "its review of the various pre-trial motions," (2) "the evidence presented at trial," (3) "NRCP 50(a) rulings," (4) "FortuNet's voluntary dismissal with prejudice of certain claims," (5) "the jury's unanimous verdict in favor of [Himelfarb]," and (6) "the jury's expressed desire to award [Himelfarb its] entire attorney's fees incurred relating to this case." The district court also cited the fact that "the deposition and trial testimony of FortuNet's [CEO] and principal witness . . . [stated] that counsel was responsible for '99.99%' of the factual and legal content of FortuNet's pleadings." Finally, the district court found that Watson "could not have made the required inquiries prior to filing" the second amended complaint against Himelfarb, "could not have reassessed the evidentiary support for FortuNet's claims against [Himelfarb]" before filing, and "could not have had a reasonable belief that the claims against [Himelfarb] were well-grounded in either fact or law."

Watson now seeks a writ of mandamus vacating the portion of the district court's order making Watson jointly and severally liable for Himelfarb's attorney fees.

## DISCUSSION

Watson contends that (1) this court should exercise its discretion to consider Watson's petition, (2) NRCP 11 supersedes NRS 7.085 such that the award against Watson is improper, and (3) the district

court abused its discretion in making Watson liable for Himelfarb's attorney fees under NRS 7.085 without making adequate findings.

*This court will exercise its discretion to consider Watson's petition*

"Whether extraordinary writ relief will issue is solely within this court's discretion." *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court*, 128 Nev., Adv. Op. 17, 273 P.3d 861, 864 (2012). "Generally, an extraordinary writ may only be issued in cases 'where there is not a plain, speedy and adequate remedy' at law." *Id.* (quoting NRS 34.170 and NRS 34.330). "The right . . . to appeal in the future, after a final judgment is ultimately entered, will generally constitute an adequate and speedy legal remedy precluding writ relief." *D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 474, 168 P.3d 731, 736 (2007).

Sanctioned attorneys do not have standing to appeal because they are not parties in the underlying action; therefore, extraordinary writs are a proper avenue for attorneys to seek review of sanctions. *See Emerson v. Eighth Judicial Dist. Court*, 127 Nev., Adv. Op. 61, 263 P.3d 224, 227 (2011); *see also Albany v. Arcata Assocs., Inc.*, 106 Nev. 688, 690, 799 P.2d 566, 567-68 (1990). Here, Watson was not a party to the underlying case, and it cannot appeal the district court's order making it jointly and severally liable for more than $500,000 in attorney fees and costs. Therefore, Watson lacks a plain, speedy, and adequate legal remedy and is entitled to seek extraordinary writ relief. As such, this court must now assess whether Watson is entitled to the writ relief it seeks.

*NRCP 11 does not supersede NRS 7.085*

This court reviews sanctions awarding attorney fees for an abuse of discretion. *Emerson*, 127 Nev., Adv. Op. 61, 263 P.3d at 229; *see also Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1095, 901 P.2d

684, 687 (1995). However, we review interpretations of statutes and the NRCP de novo. *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004); *Moseley v. Eighth Judicial Dist. Court*, 124 Nev. 654, 662, 188 P.3d 1136, 1142 (2008).

Watson argues that NRCP 11 supersedes NRS 7.085 because NRS 7.085 is a procedural statute last amended in 2003 and NRCP 11 is a procedural rule that was materially amended in 2004. According to Watson, NRCP 11's 2004 amendment added safe harbor rules that supersede NRS 7.085, such that the statute (1) is now totally superseded by NRCP 11, or (2) at least incorporates NRCP 11's safe harbor provisions. NRCP 11's safe harbor provisions prevent attorneys from being sanctioned until they have the opportunity to cure the sanctionable conduct or appear at an order to show cause hearing. NRCP 11(c). We reject Watson's argument.

Watson relies on *State v. Connery*, 99 Nev. 342, 661 P.2d 1298 (1983), to support its position that procedural rules supersede conflicting procedural statutes when the rule is enacted after the statute. In *Connery*, the issue was whether the time for appeal was governed by (1) a statute requiring appeal within 30 days of a district court's oral pronouncement of an order, or (2) a later-enacted appellate rule requiring appeal within 30 days of the district court's entry of a written order. *Id.* at 344, 661 P.2d at 1299. This court held that the subsequently enacted procedural rule superseded the statute. *Id.* at 345-46, 661 P.2d at 1300.

However, *Connery* does not compel the result Watson seeks because it is materially distinguishable from the present matter. In *Connery*, the rule and statute plainly and irreconcilably conflicted because they provided different dates from which to calculate a strict 30-day

appeal window. In this case, however, Watson has not articulated any reason why this court cannot give effect to both NRCP 11 and NRS 7.085, and there is nothing to suggest that the rule and statute cannot be read in harmony. *See Bowyer v. Taack*, 107 Nev. 625, 627-28, 817 P.2d 1176, 1178 (1991) ("[A]pparent conflicts between a court rule and a statutory provision should be harmonized and both should be given effect if possible."), *superseded by statute and rule on other grounds as recognized by McCrary v. Bianco*, 122 Nev. 102, 131 P.3d 573 (2006). Moreover, persuasive authority and Nevada's rules for statutory interpretation strongly support treating NRCP 11 and NRS 7.085 as independent sanctioning mechanisms.

Nevada adopted the 1993 version of Federal Rule of Civil Procedure (FRCP) 11 "in its entirety." NRCP 11, Drafter's Note 2004 Amendment. As the Advisory Committee Notes on the 1993 amendments to FRCP 11 make clear, FRCP 11 does not supersede or supplant 28 U.S.C. § 1927 (2014), which makes attorneys personally liable for the unreasonable and vexatious multiplication of proceedings.[2] FRCP 11, Advisory Committee Notes, 1993 Amendment, Subdivision (d).

---

[2]28 U.S.C. § 1927 (2014) states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

> Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927.

*Id.* While federal courts have declined, as a matter of discretion, to allow § 1927 to be used as a means of sidestepping FRCP 11's safe harbor provisions where the misconduct involved is clearly covered by FRCP 11, *see New England Surfaces v. E.I. DuPont de Nemours & Co.*, 558 F. Supp. 2d 116, 124 n.12 (D. Me. 2008) (citing cases), they recognize that FRCP 11 and § 1927 apply to different types of misconduct and provide independent mechanisms for sanctioning attorney misconduct. *See, e.g., Hutchinson v. Pfeil*, 208 F.3d 1180, 1183-86 (10th Cir. 2000); *Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 552 F. Supp. 2d 137, 142-43 (D. N.H. 2008) ("Although there is no First Circuit authority directly on point, [the 2d, 4th, 6th, 10th, and 11th Circuits] have ruled that the safe harbor provisions in Rule 11 do not apply to § 1927 claims."). The relationship between the Nevada statute and rule is analogous to that between § 1927 and FRCP 11. Thus, federal authority strongly indicates that NRCP 11 does not supersede NRS 7.085.

Nevada's statutory interpretation rules also support treating NRCP 11 and NRS 7.085 as separate sanctioning mechanisms. This court has "previously indicated that the rules of statutory interpretation apply to Nevada's Rules of Civil Procedure." *Webb, ex rel. Webb v. Clark Cnty.*

*Sch. Dist.*, 125 Nev. 611, 618, 218 P.3d 1239, 1244 (2009) (citing *Moseley*, 124 Nev. at 662 n.20, 188 P.3d at 1142 n.20). Further, "whenever possible, a court will interpret a rule or statute in harmony with other rules or statutes." *Nev. Power Co. v. Haggerty*, 115 Nev. 353, 364, 989 P.2d 870, 877 (1999); *see also Bowyer*, 107 Nev. at 627-28, 817 P.2d at 1178. The simplest way to reconcile NRCP 11 and NRS 7.085 is to do what federal courts have done with FRCP 11 and § 1927; treat the rule and statute as independent methods for district courts to award attorney fees for misconduct. Therefore, we conclude NRCP 11 does not supersede NRS 7.085.

*The district court failed to make adequate findings supporting sanctions against Watson*

Watson contends the district court abused its discretion in concluding that it violated NRS 7.085 because the court's findings are insufficient to support that conclusion. We agree.

NRS 7.085 allows the district court to make an attorney personally liable for the attorney fees and costs an opponent incurs when the attorney "[f]ile[s], maintain[s] or defend[s] a civil action . . . [that] is not well-grounded in fact or is not warranted by existing law or by [a good faith] argument for changing the existing law." We have previously held, in the context of an attorney fees award, that a district court abuses its discretion by making such an award without including in its order "'sufficient reasoning and findings in support of its ultimate determination.'" *Barney v. Mt. Rose Heating & Air Conditioning*, 124 Nev. 821, 829, 192 P.3d 730, 736 (2008) (quoting *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 865, 124 P.3d 530, 549 (2005)).

According to the district court's order, its award against Watson is based on (1) the jury's express desire to award Himelfarb

SUPREME COURT
OF
NEVADA

(O) 1947A

attorney fees; (2) a review of pretrial motions; (3) the evidence presented at trial; (4) the court's NRCP 50(a) rulings; (5) FortuNet's voluntary dismissal of certain claims; (6) the jury's unanimous verdict in Himelfarb's favor; (7) a statement by FortuNet's CEO that Watson was 99.99% responsible for the contents of pleadings; and (8) its determination that Watson could not have (a) made the required inquiries before filing the second amended complaint, (b) reassessed the evidence underlying FortuNet's claims, and (c) reasonably believed FortuNet's claims were well-grounded in fact or law. This reasoning does not support the imposition of sanctions against Watson.

First, the district court's order improperly relies on the jury's question to the district court about awarding Himelfarb attorney fees for FortuNet's breach of the implied covenant of good faith and fair dealing. NRS 7.085 does not empower juries to sanction attorneys. Even though juries can award attorney fees as a consequential damage for the breach of an obligation, such an award is only permissible if a request for attorney fees was pleaded in accord with NRCP 9(g). *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 117 Nev. 948, 956-57, 35 P.3d 964, 969 (2001), *receded from by Hogan v. Felton*, 123 Nev. 577, 586, 170 P.3d 982, 988 (2007). The record does not demonstrate that Himelfarb pleaded such a request in accord with NRCP 9(g). More importantly, there is no authority indicating that Watson could be liable for consequential damages caused by its *client's* breach. As such, the jury's impulse to award Himelfarb some attorney fees has no logical bearing on whether Watson can be sanctioned under NRS 7.085.

Additionally, the district court's order contains several unsupported conclusions, making meaningful review of the sanctions

impossible. In regard to Watson's purported violation of NRS 7.085, the district court does not explain (1) what defects in Watson's pretrial motions show it should be sanctioned; (2) how the evidence presented at trial was deficient; or (3) why it believes Watson could not have made any required inquiries before filing the second amended complaint, reassessed the evidence underlying FortuNet's claims, or reasonably believed that FortuNet's claims were well-grounded in fact or law. Although these conclusions may be supported by the facts in this case, this court cannot properly review the issue because the district court did not provide sufficient factual detail and reasoning to explain its decision.

Moreover, it is not clear the NRCP 50(a) rulings and FortuNet's voluntary dismissal of some claims support an award for attorney fees. Indeed, there are many cases in which attorneys are not made personally liable for fees even though some claims are dismissed before trial. *See, e.g., Semenza*, 111 Nev. at 1096, 901 P.2d at 688 (noting that voluntarily dismissing claims before trial does not necessarily indicate frivolity). Again, the district court does not explain how the pre-verdict dismissals here indicate that Watson brought or maintained groundless claims. Further, despite several claims being eliminated by NRCP 50(a) and voluntary dismissal, all those claims survived summary judgment, demonstrating the district court believed there might have been sufficient evidence to support them. Additionally, the core factual issues—whether Himelfarb was involved in the kickback scheme or the theft of FortuNet's intellectual property—still went to a jury.

Finally, the only piece of evidence the district court identifies does not explain why the award against Watson is justified. FortuNet's CEO stated that Watson was 99.99% responsible for the decision to add

Himelfarb to the second amended complaint. The district court cites this statement as evidence that Watson filed or maintained claims not well-grounded in fact or law. However, this evidence says nothing about whether the claims were well-grounded. Instead, it assigns blame to Watson for any groundlessness that may have existed, without supporting an actual finding of groundlessness. Therefore, we conclude that the district court abused its discretion in sanctioning Watson because its findings are insufficient to justify making Watson liable for attorney fees and costs under NRS 7.085.

## CONCLUSION

This court will exercise its discretion to hear Watson's writ petition because, as a nonparty in the underlying action, it has no right to appeal. This court rejects Watson's argument that NRCP 11 supersedes NRS 7.085 and concludes that NRCP 11 and NRS 7.085 are distinct and independent methods for sanctioning attorney misconduct. Nevertheless, this court concludes Watson is entitled to writ relief because the district court's order does not sufficiently explain why Watson should be liable for attorney fees under NRS 7.085. Although sufficient facts may exist to sanction Watson under NRS 7.085, the district court failed to articulate those facts in its order.

Accordingly, our intervention is warranted, and we grant the petition and direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate the portion of its September 19, 2013, order holding Watson Rounds, P.C., jointly and severally liable for Himelfarb's attorney fees and costs. Nothing in this opinion prevents Himelfarb from renewing its motion for NRS 7.085 sanctions against

Watson. However, if the district court again sanctions Watson, its order must set forth reasoning and factual findings to support its decision.

_____, J.
Parraguirre

We concur:

_____, C.J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A